893 P.2d 39

**Bobby Sid TAYLOR, Plaintiff–Appellant, Cross–Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Defendant–Appellee, Cross–Appellant.**

No. 1 CA–CV 9908.

Court of Appeals of Arizona,
Division 1, Department E.

Sept. 22, 1994.

Review Granted April 25, 1995.*

liable because of the 1983 overhauling of the engine by Ram Aircraft Modifications.

* Martone, J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Thur, Dawson & O'Sullivan, P.C. by Calvin C. Thur, Steven C. Dawson, Mark Stachon, Scottsdale, and Andrews, Marenda & Moseley, P.A. by William S. Andrews, Phoenix, A. Tod Hindin, Los Angeles, for plaintiff-appellant, cross-appellee.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Ralph E. Hunsaker and Lisa M. Sommer, Phoenix, for defendant-appellee, cross-appellant.

## OPINION

VOSS, Presiding Judge.

This appeal and cross-appeal stem from the judgments of the trial court in a bad-faith action brought by Appellant Bobby Sid Taylor ("Taylor"), against Appellee State Farm Mutual Automobile Insurance Company ("State Farm"). We hold that Taylor's bad faith claim was barred by the two-year tort statute of limitations and therefore reverse the judgment entered for Taylor.

## FACTS AND PROCEDURAL HISTORY

This case arises from an automobile accident that occurred on April 9, 1977. In that accident there was a collision involving a pickup truck driven by Taylor, a pickup truck driven by Douglas Wistrom ("Wistrom"), and a car driven by Anne Ring ("Ring") in which her brother, James Rivers ("Rivers"), was a passenger. The accident occurred at the intersection of Central and Maryland Avenues in Phoenix. Taylor had liability coverage for $50,000 with State Farm. The facts are set out in greater detail in our first opinion, *Ring v. Taylor*, 141 Ariz. 56, 59, 685 P.2d 121, 124 (App.1984). Three lawsuits arose out of this accident.

### 1. *Ring v. Taylor: Accident Liability*

After the accident, Taylor and his parents employed Attorney Norman Bruce Randall to file suit against Ring for personal injuries and to make sure that Taylor's "better interests" were protected. However, Anne Ring, her husband, Royce Ring, and Rivers filed a personal injury action against Taylor and Wistrom first. State Farm accepted the defense and retained Phoenix Attorney Leroy W. Hofmann to represent Taylor. Randall remained in the lawsuit as Taylor's personal attorney and filed a counterclaim against Ring based on the injuries that Taylor sustained in the accident. Before trial, Rivers and the Rings entered into a covenant with Wistrom not to execute on any judgment that they obtained against Wistrom. That agreement was reached because Wistrom had no insurance and was judgment proof.

On March 30, 1981, the jury awarded Anne Ring and Rivers $1.3 million each and awarded Royce Ring $21,500 for loss of consortium. State Farm appealed the judgment on behalf of Taylor without filing a supersedeas bond or obtaining a stay of execution.

On August 4, 1981, while the original case was on appeal, Taylor's attorney, Randall, drew up an agreement that State Farm accepted. This agreement provided that Taylor would release any claims he had against

State Farm under the policy and, in exchange, State Farm would pay $15,000 to him under his underinsured motorist coverage.

On March 1, 1984, we affirmed the judgment against Taylor in favor of Rivers and the Rings. *Ring v. Taylor*, 141 Ariz. 56, 685 P.2d 121.

## 2. *Ring v. State Farm: Garnishment*

During the pendency of the appeal of the liability issues, the Rings filed a garnishment action against State Farm seeking $50,000 (Taylor's liability insurance policy limits). They also sought the excess amount of the judgment against Taylor and State Farm due to the alleged bad faith of State Farm in failing to settle the Rings' claim within policy limits. The trial court granted State Farm's motion for summary judgment on the garnishment action.

In October of 1985, approximately nineteen months after we affirmed the judgment against Taylor in *Ring v. Taylor*, we ruled in favor of State Farm on the Rings' garnishment action. We held in part that the Rings could not bring a garnishment proceeding against State Farm for an alleged bad faith failure to settle within policy limits because they had not obtained an assignment of Taylor's rights. *Ring v. State Farm Mut. Auto. Ins. Co.*, 147 Ariz. 32, 37, 708 P.2d 457, 462 (App.1985).

## 3. *Taylor v. State Farm: Bad Faith*

On July 17, 1985, Taylor filed the present action against State Farm for bad faith with regard to its handling of Rivers' claim against him in the underlying personal injury action.[1] State Farm moved for summary judgment, asserting that the release agreement Taylor had executed applied to his bad faith cause of action. The motion was denied. State Farm also filed a motion for summary judgment based on the statute of limitations. This motion was also denied. State Farm then filed a motion for summary judgment to preclude the issue of punitive damages. The motion was granted shortly before trial.

Trial commenced February 11, 1987. Approximately one month into the trial, Taylor requested reconsideration of the order granting summary judgment on the punitive damages issue based on additional evidence produced at trial. The trial court refused to reconsider the order.

Following the trial, the jury awarded Taylor $2.1 million in compensatory damages, and the court awarded Taylor $300,000 in attorney's fees. Judgment was entered on June 17, 1987.

Taylor appealed from the order granting partial summary judgment in State Farm's favor on the punitive damages issue and from the court's failure to reconsider the motion based upon additional evidence presented at trial. State Farm cross-appealed on ten issues including the denials of its motions for summary judgment. We reversed the trial court's denial of summary judgment on the basis of the release agreement and ordered it to enter judgment on behalf of State Farm. *Taylor v. State Farm Mut. Auto. Ins. Co.*, No. 1 CA–CV 9908, 1994 WL 513858 (Sep. 17, 1991) (mem. dec.).

Taylor appealed this decision to the supreme court in a petition for review which was granted on March 17, 1992. The supreme court vacated our memorandum decision and remanded the appeal "for resolution of the remaining issues." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 159, 854 P.2d 1134, 1145 (1993).

## DISCUSSION

■ Because its resolution is case dispositive, we deal solely with the issue whether the trial court was correct in ruling that Taylor's bad faith claim was timely under the applicable statute of limitations. When deciding whether a particular claim is time-barred, we must examine four factors: (1) when did the plaintiff's cause of action accrue; (2) what is the applicable statute of limitations period; (3) when did the plaintiff file his claim; and (4) was the running of the limitations period suspended or tolled for any reason? *Roldan v. Allstate Ins. Co.*, 149 A.D.2d 20, 544 N.Y.S.2d 359, 362 (1989).

---

1. State Farm settled with the Rings before this case was filed.

■ The second factor is undisputed: an insurer's breach of the implied covenant of good faith and fair dealing is treated as a tort. *Rawlings v. Apodaca,* 151 Ariz. 149, 158–61, 726 P.2d 565, 574–77 (1986). Therefore the two-year statute of limitations for torts applies. Ariz.Rev.Stat.Ann. ("A.R.S.") § 12–542 (1992). The parties also agree on the third factor: Taylor filed his claim against State Farm on July 17, 1985.

As to the remaining factors, Taylor first contends that a bad faith cause of action does not accrue until the underlying judgment against the insured is affirmed on appeal. In the alternative, Taylor argues that even if such claims accrue earlier, the statute of limitations should be tolled or suspended. We disagree. .

### 1. *When Did Taylor's Bad Faith Cause of Action Accrue?*

■ Generally, a tort claim accrues when a plaintiff knows or should know of the defendant's wrongful conduct. *Long v. Buckley,* 129 Ariz. 141, 143, 629 P.2d 557, 559 (App.1981). When the judgment in excess of $1.3 million was entered against Taylor on March 30, 1981, his reaction to this verdict was instantaneous and severe. He testified "it was like a really bad nightmare." He feared collection efforts, despaired his inability to own property, and even testified that he contemplated suicide.

In *Pace Industries, Inc. v. Three Phoenix Co.,* 813 F.2d 234 (9th Cir.1987), the appellant protested the district court's dismissal of its cause as untimely filed. The appellant there, like Taylor, argued that "its cause of action was tolled during the state court ac-

tion until the final decision of the Arizona Supreme Court when its damages first became fixed and ascertainable." *Id.* at 239–40. The circuit court disagreed, stating:

> Thus, uncertain damages, which prevent recovery, are distinguishable from uncertain extent of damage, which does not prevent recovery. [Citation omitted.] The former denotes failure to establish an injury, while the latter denotes imprecision with regard to the scope or extent of the injury. The question of whether there is a right to recovery is not to be confused with the difficulty in ascertaining the scope or extent of the injury. *Id.* at 240.

The judgment dismissing appellant's claim was affirmed as untimely. *Id.* at 241.

In accord with this case and dealing specifically with bad faith claims where an appeal is involved, our supreme court in *Farmers Ins. Exch. v. Henderson,* 82 Ariz. 335, 341, 313 P.2d 404, 408 (1957) held that an insured's bad faith cause of action accrues when the insured "has become obligated to pay a judgment wrongfully imposed upon him...."

These cases support the conclusion that a cause of action accrues when a party has a legal right to sue. Here, when the jury returned the excess verdict against Taylor all the elements of a lawsuit were manifest. There was a duty (State Farm's obligation to act in good faith toward Taylor), there was an alleged breach (State Farm did not settle the suit for policy limits in a close liability case with serious injuries), and there were damages (Taylor testified at length about the emotional and financial damage suffered from the instant the verdict was read).[2] Ap-

---

**2.** Arizona's bad faith law is based upon the unique relationship between the insured and the insurance company:

> [T]he insured's object in buying the company's express covenant to pay claims is security from financial loss which he may sustain from claims against him and protection against economic catastrophe in those situations in which he may be the victim. [Citations omitted.] In both cases, he seeks peace of mind from the fears that accompany such exposure.... We hold, therefore, that one of the benefits that flow from the insurance contract is the insured's expectation that his insurance company will not wrongfully deprive him of the very

security for which he bargained or expose him to the catastrophe from which he sought protection. Conduct by the insurer which does destroy the security or impair the protection purchased breaches the implied covenant of good faith and fair dealing implied in the contract.

*Rawlings,* 151 Ariz. at 154–55, 726 P.2d at 570–71.

If State Farm failed to settle in bad faith, its conduct destroyed the security and impaired the protection purchased by Taylor at the time the verdicts were returned, not after the verdicts were affirmed on appeal. Taylor's testimony makes it clear that he felt exposed to "economic catastrophe" immediately upon hearing the ver-

plying these cases to the facts here, it is clear that Taylor became obligated to pay (i.e., his cause of action accrued) on March 30, 1981, the date that the excess judgment was entered against him.[3] Taylor had until March 30, 1983, to file his bad faith claim against State Farm. He filed in July 1985. Therefore, Taylor's bad faith claim was untimely unless the statute was tolled or suspended.

### 2. *Was the Limitations Period Tolled or Suspended?*

Taylor argues that even if his cause of action accrued on March 30, 1981, the limitations period should be viewed as tolled or suspended because: (a) the no action clause in his insurance policy with State Farm applies to bad faith claims; (b) State Farm is judicially estopped from invoking a statute of limitations defense because it previously asserted that no bad faith cause of action existed until the underlying judgment was final on appeal; or (c) bad faith claims should be treated like other tort claims which have been deemed precluded while an underlying judgment is on appeal. We find none of these arguments persuasive.

### a. *The No Action Clause*

■ The trial court, in denying State Farm's motion for summary judgment on the statute of limitations issue, relied on the no action clause in finding Taylor's action timely. The trial judge stated: "The language of the 'no action' clause of the policy applies to all actions, including an action brought by the insured against the insurer for the tort of bad faith." We disagree. We do not believe that this clause encompasses bad faith claims. The clause reads as follows:

No action shall lie against the company:

(a) Unless as a condition precedent thereto there shall have been full compliance with all terms of this policy.

(b) Under coverages A and B, until the amount of the *insured's* obligation to pay

shall have been finally determined either by judgment against the *insured* after actual trial and affirmed on appeal ... or by written agreement of the *insured,* the claimant and the company. (Emphasis added.)

Neither Taylor nor State Farm has ever contended that Taylor failed to comply with the terms of the policy. Thus, the only possible basis for tolling the statute of limitations under this no action clause is to interpret the phrase "[n]o action shall lie against the company ... [u]nder coverages A and B" as encompassing bad faith claims against State Farm by the insured. We reject this interpretation not only because it does violence to the plain language of the contract, but also because such a holding would be inconsistent with prior decisions in this case.

On its face this clause relates only to actions brought to enforce State Farm's *contractual* obligation to indemnify its insured according to the terms and amounts "[u]nder coverages A and B...." As we stated in *Ring v. State Farm,* this no action clause "clearly provide[s] that State Farm's obligation to pay on behalf of its insured does not arise until an underlying judgment has been affirmed on appeal, if an appeal is taken." 147 Ariz. at 34–35, 708 P.2d at 459–60. The clause does not apply, however, to tort actions for bad faith and damages in excess of policy limits.

Indeed, to interpret the clause otherwise would be inconsistent with the supreme court opinion which remanded this case to us. In that opinion, the supreme court held that a release signed by Taylor in favor of State Farm did not encompass any bad faith claims because it was limited by its language to "all contractual rights, claims, and causes of action ... under the policy of insurance," and bad faith is a tort claim. *Taylor v. State Farm,* 175 Ariz. at 155–58, 854 P.2d at 1141–44.

---

dicts, and he sought compensation for the damages he felt he suffered from that moment forward.

**3.** It could be argued under *Henderson,* 82 Ariz. 335, 313 P.2d 404, that accrual of the cause of

action might be delayed in cases where a supersedeas bond is posted and the insured is therefore not immediately obligated to pay. Since no such bond was posted here, however, we need not reach this issue.

In light of both the supreme court's opinion and the fact that the no action clause also is limited by its language to actions under the coverage terms of the policy, it would be inconsistent to read the no action clause as applying to bad faith claims. Accordingly, we hold that the no action clause provides no basis for tolling the statute of limitations, and the trial court erred in denying State Farm's motion for summary judgment on that basis.

### b. *Judicial Estoppel*

Taylor next argues that State Farm is judicially estopped from raising the statute of limitations defense because it previously argued that Taylor had no viable bad faith claim until all appeals of the underlying liability judgment against Taylor were final. Taylor contends that State Farm asserted this position in its answering brief in the appeal in *Ring v. State Farm* and in its opposition to a petition to transfer that case to the supreme court.

State Farm's opposition to the petition for transfer in *Ring v. State Farm* did state that a bad faith claim would be "premature" prior to a final appeal of the judgment against Taylor. In contrast, nothing in State Farm's answering brief in that case asserts such a position. Even if we accept Taylor's argument that State Farm did assert that position in both instances, Taylor's attempt to invoke judicial estoppel still fails.

■ The mere fact that a party has taken inconsistent positions in judicial proceedings is not enough to create judicial estoppel. Rather, to create judicial estoppel, the position first asserted must have been successfully maintained. *Standage Ventures, Inc. v. State*, 114 Ariz. 480, 483, 562 P.2d 360, 363 (1977). In other words, the party must have prevailed and gained some judicial relief as a result of asserting a particular position. *State Farm Auto. Ins. Co. v. Civil Service Emp. Ins. Co.*, 19 Ariz.App. 594, 600, 509 P.2d 725, 731 (1973); *see also Combs v. Lufkin*, 123 Ariz. 210, 213, 598 P.2d 1029, 1032 (App.1979); *Mecham v. City of Glendale*, 15 Ariz.App. 402, 404, 489 P.2d 65, 67 (1971). Thus, for judicial estoppel to apply here,

State Farm's success on the petition for transfer or the appeal in *Ring v. State Farm* must have been based on the assertion which Taylor now insists State Farm be required to embrace.[4] Such is not the case.

■ First, we cannot discern the basis for State Farm's "success" on the petition to transfer because the supreme court summarily denied it without explanation. Thus, we are unable to say whether State Farm's comment regarding the prematurity of the bad faith claim played any part in the court's decision and therefore cannot invoke judicial estoppel on that basis. Second, contrary to Taylor's assertions, the issue of whether Taylor had a ripe bad faith claim against State Farm was not essential to our decision in *Ring v. State Farm*. Indeed, we never reached that issue. We simply held that the Rings could not maintain a bad faith garnishment action against State Farm because Taylor had not assigned any of his rights against State Farm (accrued or otherwise). 147 Ariz. at 37, 708 P.2d at 462 ("[A]n injured plaintiff may not bring garnishment proceedings against an insurer for an alleged bad faith failure to settle without an assignment of the insured's rights."). Thus, State Farm is not judicially estopped from raising the statute of limitations defense.

### c. *Comparison to Other Tort Claims*

As his final argument supporting the suspension of the statute of limitations, Taylor contends that we should follow the approach taken in both malicious prosecution and legal malpractice cases and suspend accrual of bad faith claims until all appeals of the underlying judgment are final. Taylor argues that this approach should be adopted because in both bad faith claims and malicious prosecution actions, the actor's grounds for the action (or lack thereof) are at issue. Moreover, he analogizes bad faith claims to legal malpractice actions by arguing that damages for both are contingent on the outcome of an appeal. We disagree.

The direct answer to Taylor's argument is that we are bound by and agree with the

---

4. We find it doubtful that the denial of a petition to transfer constitutes "judicial relief" for purposes of judicial estoppel, but whether it is or not does not affect our resolution of this issue.

supreme court's holding in *Henderson* that bad faith claims accrue "when [an] insured has become obligated to pay a judgment wrongfully imposed upon him...." 82 Ariz. at 341, 313 P.2d at 408. But even if we were not limited by that holding, bad faith claims are distinguishable from malicious prosecution and legal malpractice claims.

First, unlike malicious prosecution,[5] "[t]he possibility of a reversal of the judgment in the underlying action on appeal is not an absolute impediment to the insured's ability to allege and prove a 'bad faith' cause of action." *Roldan*, 544 N.Y.S.2d at 364 n. 3. Second, unlike legal malpractice actions, "the damages attributable to any breach of the duty to indemnify are ascertainable as soon as the judgment in the underlying action is entered...." *Id.* at 365 n. 4.[6]

■ In our view, developing case law favors recognizing that bad faith is an independent tort with independent damages. *See, e.g., Rawlings*, 151 Ariz. at 157, 726 P.2d at 573 (Bad faith can exist even though the insurer performs its express covenants under the insurance contract.); *Campbell v. State Farm Mut. Auto. Ins. Co.*, 840 P.2d 130, 140 (Utah App.1992) ("Eventual payment of the excess judgment does not compensate the insured for emotional injury, damages to the insured's reputation and credit rating ... or any other legally cognizable injury stemming from the insurer's failure to settle."). Taken together, these holdings indicate that all the elements necessary to enforce a cause of action for bad faith accrue once a judgment in excess of policy limits is entered against the insured when the insurer has unreason-ably refused to settle within policy limits. *See also Roldan*, 544 N.Y.S.2d at 363 ("[A] particular cause of action accrues as soon as a claimant is able to state the elements of that cause of action....").

■ The test for bad faith is whether the insurer, in determining whether to settle, has given at least as much consideration to the interests of the insured as to its own interests. *Larraburu Bros., Inc. v. Royal Indem. Co.*, 604 F.2d 1208, 1212 (9th Cir.1979) (citing *Crisci v. Security Ins. Co.*, 58 Cal.Rptr. 13, 16, 426 P.2d 173, 176 (1967)); *Campbell*, 840 P.2d at 138–39; *see also Rawlings*, 151 Ariz. at 157, 726 P.2d at 573 (An insurer has a "duty to play fairly with its insureds and to give their legitimate interests equal consideration."). Under this standard, a jury could conceivably find that an insurer acted unreasonably in subjecting its insured to the emotional trauma and other damages associated with having such a massive excess judgment hanging over his or her head during the pendency of the appeal, even if the appeal was successful. This would be even more likely in situations where the insurer, as here, failed to protect the insured by superseding the judgment. Thus, we view the eventual appellate outcome of the underlying judgment as going more to the issue of damages than to whether the insurer committed bad faith.

There are also sound policy reasons for holding that bad faith claims accrue upon entry of an excess judgment against the insured. Until an insured's cause of action accrues, he cannot file suit against his insurance company and therefore cannot engage

---

5. In malicious prosecution cases, a necessary element is that the underlying action be terminated favorably to the plaintiff. *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 417, 758 P.2d 1313, 1319 (1988). In contrast, an action for bad faith based upon a company's refusal to settle is not based entirely upon the ultimate success or failure of the underlying action, but is based upon the way the insurance company represented its insured's interest in defending the claim. The reasonableness of the company's action in failing to settle a case should not be exclusively determined by the results on appeal of the underlying action. *See Rawlings*, 151 Ariz. at 154–55, 726 P.2d at 570–71.

6. Taylor's reliance on *Amfac Distribution Corp. v. Miller*, 138 Ariz. 152, 154, 673 P.2d 792, 794 (1983) is misplaced. *Amfac* concluded that for legal malpractice cases, the statute of limitations did not begin to run until after the completion of an appeal of the case in which the alleged negligence occurred. The reason cited by the court was that AMFAC had not suffered "irrevocable damages" until resolution of the appeal. *Id.* The supreme court stated: "[E]ven where a plaintiff has discovered actual negligence, if he has sustained no damages, he has no cause of action. Only when he has sustained damages is he able to sue." *Id.* Taylor testified that he suffered damages at the time the verdict was entered. These damages could not be remedied by vacating the judgment.

in discovery and pursue timely relief. Thus, if we were to adopt the approach that bad faith claims do not accrue until after the appeal of the underlying judgment is final, an insured in Taylor's position could be forced to wait years (three years passed from the appeal of the Rings' judgment until it was affirmed) before beginning discovery. During this time witnesses might become unavailable for a variety of reasons, documents may be lost or destroyed, and at a minimum the memories of all parties involved could fade. If the *Ring v. Taylor* appeal had taken as long as the present appeal, Taylor's cause of action still would not have accrued—some *ten years* after the adverse judgment. Thus, holding that bad faith claims accrue upon entry of judgment against the insured better protects the parties' interests. Any difficulties associated with permitting the maintenance of such suits prior to the final disposition of the underlying judgment can be resolved through motions practice.

## CONCLUSION

In accord with our supreme court's opinion in *Henderson*, we conclude that Taylor's bad faith cause of action against State Farm accrued on the date judgment was entered against him—March 30, 1981. Because Taylor failed to file his claim within the two-year statute of limitations period, and the period was neither tolled nor suspended, Taylor's filing in July 1985 was untimely and barred by the statute of limitations. Thus, we conclude that the trial court erred as a matter of law in finding that Taylor's claim was timely filed and in denying State Farm's motion for summary judgment on that basis.

This matter is reversed and remanded to the trial court with instructions to enter judgment in favor of State Farm on the basis that Taylor's claim is barred by the statute of limitations.

MCGREGOR and O'NEIL,[7] JJ., concur.

7. The Honorable William J. O'Neil, Pinal County Superior Court Judge, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to article 6, section 3 of the Arizona Constitution.