913 P.2d 1092

Bobby Sid TAYLOR, Plaintiff–
Appellant/Cross–Appellee,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois
corporation, Defendant–Appellee/Cross–
Appellant.

No. CV–94–0505–PR.

Supreme Court of Arizona,
In Panel.

April 11, 1996.

Thur, Dawson & O'Sullivan by Calvin C. Thur, Steven C. Dawson, Scottsdale, Mark Stachon, Phoenix, William S. Andrews, Phoenix, and A. Tod Hindin, Los Angeles, CA, for Bobby Sid Taylor.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Ralph E. Hunsaker, Lisa M. Sommer, Christopher Robbins, Phoenix, for State Farm Mutual Automobile Insurance Company.

Treon, Strick, Lucia & Aguirre, P.A. by Richard T. Treon, Arthur G. Newman, Jr., Phoenix, for James Rivers, amicus curiae.

## OPINION

FELDMAN, Chief Justice.

Bobby Sid Taylor sought this court's review of a court of appeals' opinion holding that his bad faith claim against State Farm Mutual Insurance Company ("State Farm") was barred by the statute of limitations. *See Taylor v. State Farm Mut. Auto. Ins. Co.*, 182 Ariz. 39, 893 P.2d 39 (1994) (*"Taylor II"*). We granted review to determine the date of accrual of a cause of action for bad faith refusal to settle a liability claim against the insured, and whether such a claim is governed by a contract or tort statute of limitations.[1] We have jurisdiction pursuant

---

1. We also granted review to determine if State Farm is estopped from taking a contrary position on the meaning of the policy's "no action" clause in this appeal, when in a prior appeal it argued

to Ariz. Const. art. VI, § 5(3), and Ariz. R.Civ.App.P. 23.

## FACTS AND PROCEDURAL HISTORY

This is the second appeal to this court arising out of an automobile accident that occurred some nineteen years ago, on April 9, 1977, when Bobby Sid Taylor negligently injured Anne Ring and James Rivers. The facts of that accident are set forth in *Ring v. Taylor*, 141 Ariz. 56, 685 P.2d 121 (App.1984) ("*Ring I*"). Ring, her husband, and Rivers filed personal injury actions against Taylor.

Taylor was insured by State Farm under a policy carrying a liability limit of $50,000. State Farm designated attorney Hofmann to defend Taylor in the personal injury action. Taylor personally retained attorney Randall, who filed a counterclaim against Ring. Although Ring and Rivers agreed to settle by accepting the policy limit, State Farm refused. The case went to trial, and on March 30, 1981, the jury returned a verdict against Taylor, awarding Rivers and Ring $1.3 million each, and Ring's husband $21,500 for loss of consortium. These verdicts exceeded Taylor's liability coverage by more than $2.6 million. Without filing a supersedeas bond or obtaining an order staying execution, State Farm appealed; the court of appeals affirmed the judgment in March 1984, and this court denied review. *Id.*

While that case was on appeal, Ring attempted to garnish any bad faith claim Taylor might have against State Farm for the latter's failure to settle within the policy limits. Because Taylor had not assigned his bad faith action to Ring, the court of appeals dismissed the proceeding and quashed Ring's writ of garnishment. *Ring v. State Farm Mut. Auto. Ins. Co.*, 147 Ariz. 32, 708 P.2d 457 (App.1985) ("*Ring II*"). In June 1985, State Farm settled with Ring.

On July 17, 1985, Taylor sued State Farm for bad faith based on the excess judgment in favor of Rivers resulting from State Farm's refusal to settle Rivers' claim within Taylor's $50,000 policy limits. On June 17, 1987, a jury returned a verdict in favor of Taylor and against State Farm for $2.1 million compensatory damages and $300,000 in attorneys' fees. State Farm again appealed, and on September 17, 1987, the court of appeals held that Taylor's claim against State Farm was barred under the terms of a prior release between the parties. *Taylor v. State Farm Mut. Auto Ins. Co.*, No. 1 CA–CV 9908 (1991) (mem. dec.).[2] This court vacated that decision on June 10, 1993, holding that "extrinsic evidence supported Taylor's contention that the release language was not intended to release his bad faith claim," leaving intact the jury's verdict in favor of Taylor on the release issue. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 158–59, 854 P.2d 1134, 1144–45 (1993) ("*Taylor I*"). We remanded to the court of appeals to address the remaining issues. *Id.* The court of appeals again reversed the judgment for Taylor, this time on statute of limitations grounds. The court held that the two-year statute of limitations applied to Taylor's bad faith claim and that the action accrued in March 1981, at the time the excess verdict was rendered. *Taylor II*, 182 Ariz. at 46, 893 P.2d at 46. That opinion is the subject of this review proceeding.

## DISCUSSION

### A. Are bad faith claims governed by a tort or a contract statute of limitations?

Bad faith actions against insurers usually fall into the category of "first-party" or "third-party" actions, depending on the type of coverage at issue. *Clearwater v. State Farm Mut. Auto. Ins. Co.*, 164 Ariz. 256, 258, 792 P.2d 719, 721 (1990). An action alleging

---

that the clause precludes adjudication of its liability to Taylor until the underlying judgment had been affirmed on appeal. *Ring v. State Farm Mut. Auto. Ins. Co.*, 147 Ariz. 32, 33, 708 P.2d 457, 458 (App.1985). However, our disposition of the other issues presented for review makes it unnecessary to reach the merits of the estoppel issue.

**2.** According to the agreement, Taylor released certain claims against State Farm under the policy in exchange for State Farm's payment of $15,000 to Taylor under his underinsured motorist coverage. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 155, 854 P.2d 1134, 1141 (1993).

that the insurer acted in bad faith in its duty to indemnify or protect the insured from third-party claims is governed by a third-party claims analysis, regardless of whether the insured or the third party sues the insurer. *Id.* In contrast, first-party actions arise out of a direct obligation by which the carrier contracts to pay benefits directly to the insured (or a beneficiary) for losses incurred by either. *Id.; see also* Department of Ins. Rules, Art. 8, R4–14–801(B)(4), (10) (defining first- and third-party claimants). Because Taylor's action finds fault with State Farm's failure to protect Taylor from Rivers' claim, the third-party analysis applies.

■ A cause of action for bad faith refusal to settle was recognized by this court as a valid third-party claim in *Farmers Ins. Exch. v. Henderson*, 82 Ariz. 335, 338, 313 P.2d 404, 405–06 (1957). The cause of action stems from the duty of good faith and fair dealing, which is derived from the underlying contractual relationship and is implied in all contracts. *Rawlings v. Apodaca*, 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986); *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 383, 710 P.2d 1025, 1038 (1985). The duty of good faith requires that neither party act in a manner that would damage the rights of the other party to receive the benefits flowing from the underlying contractual relationship. *Rawlings*, 151 Ariz. at 153–54, 726 P.2d at 569–70; *Wagenseller*, 147 Ariz. at 383, 710 P.2d at 1038.

■ Although the underlying contract provides the basis for a bad faith action, this court has recognized the insurance carrier's breach of the duty of good faith as a tort. *Noble v. National Am. Life Ins. Co.*, 128 Ariz. 188, 189, 624 P.2d 866, 867 (1981). Moreover, the court of appeals has applied the tort statute of limitations to bad faith claims. *Ness v. Western Sec. Life Ins. Co.*, 174 Ariz. 497, 500, 851 P.2d 122, 125 (App. 1992).[3] California has expressly recognized that a liability insurer's breach of the duty of good faith when considering a settlement with a third-party claimant is a tort. *Crisci*

*v. Security Ins. Co.*, 66 Cal.2d 425, 58 Cal. Rptr. 13, 426 P.2d 173 (1967). This court, however, has never decided as a contested issue which statute of limitations applies to an action for bad faith failure to settle. Due to the nature of the underlying dispute in a third-party failure-to-settle claim, and the historical development of bad faith law, we believe the tort statute of limitations is appropriate.

In *Rawlings*, this court was asked to decide for the first time whether the covenant of good faith and fair dealing in a first-party claim sounded in tort or contract. In constructing the appropriate framework, we noted that the insurance relationship is unique from that of other contracts because it is "characterized by elements of public interest, adhesion, and fiduciary responsibility." 151 Ariz. at 158, 726 P.2d at 574. The insured receives intangible benefits from the relationship, such as peace of mind and the knowledge that the carrier will give equal consideration in all matters to the insured's interests. *Id.* at 157, 726 P.2d at 573. When the carrier fails to deliver these non-commercial benefits, contract damages are seldom adequate. *Id.* at 159, 726 P.2d at 575. Moreover, because the insured may be injured when the insurer manipulates its bargaining power to its own advantage, the insurer may breach its duty of good faith without actually breaching express covenants in the contract. Likewise, the insurer may breach an express covenant without breaching the implied covenant of good faith and fair dealing. *Id.* at 157–60, 726 P.2d at 573–76. We noted this distinction in *Rawlings* and stated that

> in special contractual relationships, when one party intentionally breaches the implied covenant of good faith and fair dealing, and when contract remedies serve only to encourage such conduct, it is appropriate to permit the damaged party to maintain an action in tort and to recover tort damages.

*Id.* at 160, 726 P.2d at 576.

Taylor acknowledges that *Rawlings* allowed a first-party bad faith claim to proceed

---

**3.** The accrual issue was also decided in *Ness*, in which the court of appeals held that the action accrued on the date the insurer intentionally denies the claim. 174 Ariz. at 500, 851 P.2d at 125. However, because *Ness* involved a first-

party action against the insurer, the accrual issue is inapplicable here, and we need not address whether that court's disposition on the issue is correct.

in tort but urges that it notes a lack of consensus on the nature of bad faith claims. We recognize the almost even split in jurisdictions regarding which rubric best fits bad faith claims and that bad faith actions contain characteristics of both tort and contract. However, we believe the *Rawlings'* rationale is especially applicable to third-party cases like the one before us because the relationship between the parties, rather than any express contractual provisions, begets the cause of action.[4] Here, Taylor purchased insurance from State Farm to obtain protection that could exist only if State Farm would in good faith defend any covered claims made against him. By implication, State Farm necessarily had a duty to consider settling. *Henderson*, 82 Ariz. at 341, 313 P.2d at 408. Because Taylor's injury resulted from State Farm's failure to give equal consideration to his interests when refusing to settle with Rivers—a breach of State Farm's *implied* duty of good faith—it is more appropriate that Taylor's third-party claim for bad faith failure to settle be governed by the tort statute of limitations. Thus, the two-year period from accrual, specified in A.R.S. § 12–542, applies. *See Richardson v. Allstate Ins. Co.*, 117 Cal.App.3d 8, 172 Cal.Rptr. 423, 426 (1981) (the nature of the right sued upon determines the appropriate statute of limitations) (quoting *Jefferson v. J.E. French Co.*, 54 Cal.2d 717, 7 Cal.Rptr. 899, 900, 355 P.2d 643, 644 (1960)); *Employers' Fire Ins. Co. v. Love It Ice Cream Co.*, 64 Or.App. 784, 670 P.2d 160 (1983).

### B. When does a third-party bad faith claim accrue?

The general rule is that a tort claim accrues when a plaintiff knows, or through the exercise of reasonable diligence should know, of the defendant's wrongful conduct. *Sato v. Van Denburgh*, 123 Ariz. 225, 227, 599 P.2d 181, 183 (1979). Applying this principle, and citing *Henderson*, the court of appeals held that the two-year statute of limitations began to run on March 30, 1981,

when the jury returned the excess verdict. *Taylor II*, 182 Ariz. at 42–43, 893 P.2d at 42–43. Thus, it found Taylor's bad faith claim, filed in July 1985, time barred. We disagree with both the court's reading of *Henderson* and its ultimate conclusion.

In *Henderson*, this court examined for the first time the extent of an insurer's obligation to settle a third-party claim within the policy's liability limit. 82 Ariz. at 337, 313 P.2d at 405. We stated that an insurer is liable to the insured for failing to terminate the underlying litigation when good faith would oblige it to settle within policy limits. *Id.* at 341, 313 P.2d at 408. The insurance carrier argued that the bad faith action against the insurer did not accrue until the insured paid the underlying judgment. We disagreed, stating that "a better rule is that when the insured has become obligated to pay [the excess] judgment . . . his cause of action accrues." *Id.* Borrowing this language, the court of appeals held that Taylor became legally obligated to pay when the excess judgment was entered. *Taylor II*, 182 Ariz. at 43, 893 P.2d at 43.

In the present case, the court of appeals misapplied the *Henderson* language. The above quoted language responded to the insurer's assertion that the insured had no cause of action until he had in fact paid the judgment. We held only that the insurer could not require the insured to personally pay the underlying judgment to trigger his bad faith action against the insurer. *Henderson*, 82 Ariz. at 342, 313 P.2d at 408. We were not asked to decide, nor did we decide, whether the underlying judgment against the insured had to be final before the bad faith claim accrued. In fact, this court has never before determined when an action for bad faith failure to settle accrues in the context presented in the present case.

That is not to say that bad faith accrual is a rare issue. Those jurisdictions that have addressed the issue have held that an insured's claim for its insurer's bad faith refus-

---

4. Oregon, for example, characterizes a third-party bad faith claim as a tort because it is based on the breach of a fiduciary duty, while the first-party bad faith claim is relegated to the contract arena. *See Employers' Fire Ins. Co. v. Love It Ice*

*Cream Co.*, 64 Or.App. 784, 670 P.2d 160 (1983); S. Bopp, *Tort and Contract in Bad Faith Cases: Is the Honeymoon Over?*, 59 Def.Couns. J. 524, 530 (1992).

al to settle accrues when the excess judgment in the underlying case becomes final.[5] Neither the court of appeals nor State Farm cites any case to the contrary, and our research has produced none.

Rather, State Farm attempts to exempt Arizona from what appears to be the consensus because "[our] bad faith law is based upon the unique relationship between the insured and the insurance company." *Taylor II*, 182 Ariz. at 43 n. 2, 893 P.2d at 43 n. 2 (citing *Rawlings*, 151 Ariz. at 154–55, 726 P.2d at 570–71). Because Arizona bad faith law does not require breach of an express covenant in the contract, the argument goes, the injury results when the excess verdict is rendered. Under this rationale, the determinative issue is that any injury resulting from the insurer's bad faith would activate the statute of limitations. However, while it might be said that an excess verdict causes some immediate injury, such as emotional distress, "the economic injury necessarily remains uncertain and speculative until final judgment on appeal either establishes that exposure or dissolves any liability." *Vanderloop v. Progressive Casualty Ins. Co.*, 769 F.Supp. 1172, 1175 (D.Colo.1991). The rationale expressed in *Vanderloop* forms the basis of the final judgment accrual rule that we now choose to follow.

We believe such a rationale is equally applicable in Arizona, notwithstanding the unique relationship between the insured and insurer expressed in *Rawlings*. The policy underlying the final judgment rule is clear. First, it is impossible to determine if the insurer acted in bad faith, or the extent of the insured's damages, until the underlying liability is finally determined. *Lexington Ins. Co. v. Royal Ins. Co.*, 886 F.Supp. 837, 841 (N.D.Fla.1995). Second, because the usual essential element of the insured's third-party bad faith case—the entry of a judgment in excess of policy limits—may be reversed or modified on appeal, a different rule would result in precautionary and duplicitous litigation—a waste of both the courts' and the parties' time and resources. *See Romano v. American Casualty Co.*, 834 F.2d 968, 970 (11th Cir.1987); *Amdahl v. Stonewall Ins. Co.*, 484 N.W.2d 811, 813 (Minn.App. 1992); *State ex rel. American Home Ins. Co. v. Seay*, 355 So.2d 822, 824 (Fla.App.1978); *see also* BAD FAITH LAW REPORT, Oct. 1994, at 174–75.

As Rivers, amicus in this case, points out, we have used the same rationale to apply a similar accrual date in legal malpractice cases. *Amfac Dist. Corp. v. Miller*, 138 Ariz. 152, 673 P.2d 792 (1983). In *Amfac*, we considered the accrual date for a cause of action for legal malpractice that occurred during the course of civil litigation. We held that because the plaintiff's injury is uncertain until the appellate process concludes, by resolution of or failure to appeal, the malpractice action does not accrue until such time as

---

**5.** *Romano v. American Casualty Co.*, 834 F.2d 968, 969–970 (11th Cir.1987); *Torrez v. State Farm Mut. Auto. Ins. Co.*, 705 F.2d 1192, 1202 (10th Cir.1982); *Larraburu Bros., Inc. v. Royal Indem. Co.*, 604 F.2d 1208, 1215 (9th Cir.1979); *American Mut. Liab. Ins. Co. v. Cooper*, 61 F.2d 446, 448 (5th Cir.1932), *cert. denied*, 289 U.S. 736, 53 S.Ct. 595, 77 L.Ed. 1483 (1933); *Boyd Bros. Transp. Co., Inc. v. Fireman's Fund Ins. Cos.*, 540 F.Supp. 579, 582 (M.D.Ala.1982), *aff'd*, 729 F.2d 1407 (11th Cir.1984); *Lexington Ins. Co. v. Royal Ins. Co.*, 886 F.Supp. 837 (N.D.Fla. 1995); *Vanderloop v. Progressive Casualty Ins. Co.*, 769 F.Supp. 1172, 1175 (D.Colo.1991); *Wessing v. American Indem. Co.*, 127 F.Supp. 775, 781 (W.D.Mo.1955); *Oliver B. Cannon & Son, Inc. v. Fidelity & Casualty Co.*, 484 F.Supp. 1375, 1389 (D.Del.1980); *Hartford Accident & Indem. Co. v. Cosby*, 173 So.2d 585, 589–90 (Ala. 1965); *Nationwide Ins. Co. v. Superior Court*, 128 Cal.App.3d 711, 180 Cal.Rptr. 464, 467 (1982); *Woolett v. American Employers Ins. Co.*, 77 Cal.

App.3d 619, 143 Cal.Rptr. 799, 801 (1978); *State ex rel. American Home Ins. Co. v. Seay*, 355 So.2d 822, 824–25 (Fla.App.1978), *cert. denied*, 361 So.2d 835 (1978); *Amdahl v. Stonewall Ins. Co.*, 484 N.W.2d 811, 813–14 (Minn.App.1992); *Linkenhoger v. American Fidelity & Casualty Co.*, 152 Tex. 534, 260 S.W.2d 884, 887 (1953), overruled in part on other grounds, *Street v. Honorable Second. Ct.App.*, 756 S.W.2d 299 (Tex.1988); *Campbell v. State Farm Mut. Auto. Ins. Co.*, 840 P.2d 130, 140 n. 20 (Utah App.1992), *cert. denied*, 853 P.2d 897 (1992); *Bush v. Safeco Ins. Co.*, 23 Wash.App. 327, 596 P.2d 1357, 1358 (1979); *Jenkins v. J.C. Penney Casualty Ins. Co.*, 167 W.Va. 597, 280 S.E.2d 252, 259 (1981), overruled in part on other grounds, *State ex rel. State Farm Fire & Casualty Coverage v. Madden*, 192 W.Va. 155, 451 S.E.2d 721 (1984); *see also* SHERNOFF, GAGE & LEVINE, INSURANCE BAD FAITH LITIGATION § 20.07[4][a] (1984); McCARTHY, PUNITIVE DAMAGES IN BAD FAITH CASES § 5.13 (5th ed. 1990); Annot., 68 A.L.R.2d 892, 894 § 3.

the judgment in the underlying action becomes final. *Id.*

Another policy issue addressed in *Amfac* involves the impact of the accrual date on the relationship between the lawyer and the client. We adopted the court of appeals' rationale:

> If we were to hold that a cause of action for legal malpractice in litigation accrues at the time of the conduct or initial judgment rather than at the time the damage has become irremedial, a client would constantly be required to second-guess his attorney and would be forced to obtain other legal opinions on the attorney's handling of the case. Nothing could be more destructive [to] the attorney-client relationship.

*Amfac Dist. Corp. v. Miller,* 138 Ariz. 155, 157–58, 673 P.2d 795, 797–98 (App.1983). Similarly, an accrual rule for bad faith claims that requires the insured to bring an action before the judgment becomes final would force an insured to sue his carrier while, at the same time, depend on the carrier to zealously represent him at the appeal of his third-party claim. The relationship between the parties, the nature of the claim, and judicial efficiency combine to militate in favor of a rule that the insured not be required to sue until the damages are final and irrevocable.

■ Sound judgment and public policy convince us to follow the final judgment accrual rule. Thus, we hold that a third-party bad faith failure-to-settle claim accrues at the time the underlying action becomes final and non-appealable. Accordingly, Taylor's bad faith claim against State Farm accrued in 1984, when the excess verdict became final; thus, the 1985 bad faith action was timely filed within the applicable two-year limit.

## CONCLUSION

We approve that portion of the court of appeals' opinion finding that an action for bad faith failure to settle is governed by the two-year statute of limitations period in A.R.S. § 12–542. We vacate that portion of the opinion addressing the claim's accrual date and hold that a third-party bad faith refusal to settle claim does not accrue until such time as the underlying judgment against the insured becomes final or non-appealable. The remaining issues are remanded to the court of appeals for resolution with all appropriate haste considering the many years this case has been before the courts.

ZLAKET, V.C.J., and MOELLER, J., concur.

This case was argued to and decided by a panel of three justices. *See* Ariz. Const. Art. VI, § 2.

MARTONE, J., recused himself and did not participate in the determination of this matter; CORCORAN, J., did not participate in the determination of this matter.