

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-28-2003

# Haugh v. Allstate Ins Co

Precedential or Non-Precedential: Precedential

Docket 01-4197

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Haugh v. Allstate Ins Co" (2003). *2003 Decisions.* Paper 763.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/763

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed February 28, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-4197

DENNIS HAUGH

Appellant

v.

ALLSTATE INSURANCE COMPANY

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 99-cv-01731)
District Judge: Honorable Gary L. Lancaster

Argued December 17, 2002

BEFORE: SLOVITER, RENDELL, and GREENBERG,
Circuit Judges

(Filed: February 28, 2003)

Vincent A. Coppola (argued)
Pribanic & Pribanic
513 Court Place
Pittsburgh, PA 15219

 Attorneys for Appellant

Anthony J. Williott (argued)
Dickie, McCamey, & Chilcote, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA 15222

 Attorneys for Appellee

OPINION OF THE COURT

GREENBERG, Circuit Judge:

This matter comes on before this court on an appeal from
an order of the district court entered October 22, 2001,
granting summary judgment in favor of Allstate Insurance
Company in this insurance policy bad faith action
predicated on Allstate's failure to settle a claim asserted by
appellant Dennis Haugh against its insured, Theodore
Uher. The district court held that the statute of limitations
barred Haugh's statutory bad faith claim against Allstate
and rejected his argument that as Uher's assignee he can
assert a separate common law cause of action for breach of

Allstate's duty to act in good faith toward Uher. For the reasons set forth herein we disagree with the district court as we cannot say at this time that the action is time barred and we conclude that Haugh adequately has pled a viable common law action. Accordingly, we will reverse the order of October 22, 2001, and remand the case to the district court for further proceedings.

I. BACKGROUND

A. FACTUAL AND PROCEDURAL HISTORY

On September 7, 1993, in McKeesport, Pennsylvania, Uher struck and severely injured Haugh with his automobile. Uher reported the accident to his insurance carrier, Allstate, which assigned Veronica Clarke, an Allstate claims adjuster, to investigate the accident. Based on a visit to and photographs of the accident scene, observation of the damage to Uher's motor vehicle, Uher's and an eyewitness's accounts of the accident, and a police report Clarke determined that Uher was not liable to Haugh.

Following this investigation when Haugh's counsel, Victor Pribanic, contacted Clarke to discuss Haugh's claim Clarke informed him that Allstate had decided to deny the claim based on its determination that Uher was not liable for the accident. Pribanic, however, informed Clarke during the

conversation that there were several witnesses who would state that Uher was speeding and had crossed the center line of the roadway where he hit Haugh. In what ultimately proved to be a critical step in his representation of Haugh, Pribanic later wrote Clarke a letter dated March 2, 1994, indicating that his client would be willing to settle his claim on the basis of Allstate paying Uher's policy limit which in fact was $15,000 for a single injured claimant. The letter stated that the offer to settle for the policy limits would be revoked automatically in 30 days if not accepted. Allstate did not advise Uher of this settlement offer and on March 23, 1994, Clarke, without Uher's knowledge, sent Pribanic a letter reiterating Allstate's position that Uher was not liable for the accident. Thereafter by letter dated May 16, 1994, Pribanic informed Clarke that the offer to settle for the policy limits was withdrawn.

Inasmuch as the matter had not been settled, Haugh filed suit against Uher on July 14, 1994, in the Court of Common Pleas of Allegheny County, Pennsylvania, seeking to recover damages for his injuries. Thereafter, Joseph Toth, an Allstate insurance adjuster assigned to handle the claim in litigation, informed Uher in writing that Allstate had hired an attorney to represent him in the suit, the insurance policy limits of $15,000 might be inadequate for the amount claimed as damages, a verdict that exceeded the policy limits would result in personal liability, and he had the right to retain his own counsel. The letter, however,

did not advise Uher that Allstate had declined to settle the case for $15,000 before Haugh filed his action. On September 13, 1995, Allstate reversed its position regarding settlement as it offered to settle the case with Haugh for the $15,000 policy limits. Haugh, however, rejected the offer. Subsequently, Haugh's case came on for a trial at which he obtained a verdict on March 13, 1998, for $740,000. 1

_____

1. Even though Haugh indicates that the verdict against Uher was for $740,000 the assignment agreement he subsequently reached with Uher recites that 95% of the verdict was against Uher and 5% was against the Commonwealth of Pennsylvania, Department of Transportation. On this appeal we do not explore this discrepancy further as we have no need to do so.

The verdict led to negotiations between Haugh and Uher resulting in the execution of an assignment agreement on May 28, 1999, in which Haugh acquired Uher's right to any potential bad faith claims against Allstate in exchange for Haugh's promise to refrain from executing on the judgment against Uher. Haugh, however, did not sign this agreement but rather authorized his sister to sign his name to it and she did so. Insofar as we are aware neither Haugh nor Uher ever has challenged the validity of this agreement by reason of Haugh's sister having signed it or for any other reason.

On October 22, 1999, Haugh, as Uher's assignee, filed a bad faith action against Allstate in the district court pursuant to the Pennsylvania bad faith statute, 42 Pa. Cons. Stat. Ann. S 8371 (West 1998),2 claiming that Allstate exhibited bad faith in failing to settle the claim against Uher for the $15,000 policy limits. Haugh also advanced a separate common law cause of action for breach of Allstate's contractual duty to act in good faith. 3 Allstate subsequently moved for and then obtained a summary judgment on October 22, 2001, the district court granting its motion on the grounds that Haugh's claim brought under the Pennsylvania bad faith statute was subject to a two-year statute of limitations and was time barred and that Pennsylvania did not recognize a separate common law bad faith action predicated on Allstate's initial refusal to settle the case. In concluding that the action was time barred, the district court held that the bad faith claim accrued at the latest when Pribanic informed Clarke by his May 16, 1994 letter that he was withdrawing the offer to

_____

2. Section 8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%. (2) Award punitive damages against the insurer. (3) Assess court costs and attorneys fees against the insurer.

3. Actually the complaint did not refer specifically to the bad faith statute but the court treated it as making claims both under the statute and at common law.

4

settle for $15,000. Haugh timely filed a notice of appeal on November 19, 2001.

## B. JURISDICTION

We have jurisdiction over this matter pursuant to 28 U.S.C. S 1291. The district court had subject matter jurisdiction over this diversity of citizenship case pursuant to 28 U.S.C. S 1332.

## II. DISCUSSION

## A. STANDARD OF REVIEW

Our review of the district court's grant of a motion for summary judgment is plenary and we apply the same standard employed by the district court under Fed. R. Civ. P. 56(c). See Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 87-88 (3d Cir. 2000). Accordingly, we will affirm the district court's grant of summary judgment in favor of Allstate if it appears that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing the record, we are required to view the inferences to be drawn from the underlying facts in the light most favorable to Haugh, as the party opposing the motion, and to take his allegations as true when supported by proper proofs whenever these allegations conflict with those of Allstate. See Meritcare, Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 223 (3d Cir. 1999).

## B. ACCRUAL OF THE STATUTE OF LIMITATIONS

We first consider when the statute of limitations started to run.4 The district court found that the "bad faith claim accrued, at the latest, in 1994 when plaintiff withdrew the offer to settle the claim for the policy limits." Op. at 8. While Haugh agrees with the district court that Allstate's breach of fiduciary duty "necessarily crystalized on May 16, 1994 when Mr. Haugh withdrew his offer to settle within the meager limits of Mr. Uher's auto policy," Br. of Appellant at 17, Haugh argues that Uher was unaware of

_____

4. We are deciding all statute of limitations issues in this case under Pennsylvania law as the parties' briefs treat that law as applicable.

5

Allstate's breach of fiduciary responsibility until 1998, well within the two-year statute of limitations that the district

court applied, and that the district court should have applied the discovery rule and tolled the running of the statute of limitations until that time.

In making this contention Haugh views the matter from Uher's perspective. We agree with this approach for Haugh brings this suit as assignee of Uher's cause of action against Allstate and thus "stands in [Uher's] shoes." See Banks v. Chiffy, 24 Pa. D.&C.4th 340, 343-44 (Ct. C.P. Dauphin Co. 1995).5 Inasmuch as Haugh does not argue that the bad faith cause of action did not accrue until after the excess judgment was rendered, for purposes of this appeal the bad faith claim against Allstate arose in 1994 when Allstate declined to accept Haugh's offer to settle for the policy limits and accordingly Uher could have sued Allstate at that time.6

The general rule is that the statute of limitations begins to run as soon as a right to institute and maintain suit arises, Crouse v. Cyclops Industries, 745 A.2d 606, 611 (Pa. 2000), and, as we have indicated, for purposes of this appeal Uher could have sued Allstate in 1994 when it rejected Haugh's settlement offer. Nevertheless the statute of limitations may not have started running in 1994 because Pennsylvania law recognizes that "in some

_____

5. In these circumstances it is not material that Haugh knew in 1994 that Allstate had refused to settle his claim for $15,000 because Haugh could not have brought this action before Uher assigned his claim to him. See Brown v. Candelora, 708 A.2d 104, 111-12 (Pa. Super. Ct. 1998).

6. Haugh apparently believes that the bad faith claim against Allstate accrued in 1994 on the basis of the Superior Court of Pennsylvania's decision in Adamski v. Allstate Ins. Co., 738 A.2d 1033 (Pa. Super. Ct. 1999). We nevertheless point out that there is authority holding that an insured's claim for its insurer's bad faith refusal to settle does not accrue until the excess judgment in the underlying case becomes final. See, e.g., Torrez v. State Farm Mut. Auto. Ins. Co., 705 F.2d 1192, 1202 (10th Cir. 1982); Boyd Bros. Transp. Co., Inc. v. Fireman's Fund Ins. Co., 540 F. Supp. 579, 582 (M.D. Ala. 1982), aff 'd, 729 F.2d 1407 (11th Cir. 1984); Taylor v. State Farm Mut. Auto. Ins. Co. , 913 P.2d 1092, 1095-96 (Ariz. 1996).

circumstances, although the right to institute suit may arise, a party may not, despite the exercise of diligence, reasonably discover that he has been injured." Id. In such cases, the discovery rule applies. Id. As the Pennsylvania Supreme Court explained in Crouse, "[t]he discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct." Id. In disputed cases the trier of the facts must determine the point at which a party reasonably should have been aware that he suffered an

injury. See id. Once the running of the statute of limitations properly is tolled, "only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law." Id.

Allstate argues that the discovery rule is not applicable because Uher "was aware that the claim had not been settled." Br. of Appellee at 14. While it is true that Uher knew that the claim was proceeding to trial and therefore had not been settled in 1994, or indeed anytime before trial, the critical question is when Uher knew or should have known that Haugh had offered to settle for the policy limits and Allstate rejected this offer. We are satisfied that for purposes of Allstate's summary judgment motion the discovery rule should be applied to toll the running of the statute of limitations in this case because Uher's deposition testimony makes clear that he was not aware of Haugh's offer to settle in 1994. Moreover, Allstate has not offered evidence to contradict Uher's deposition. The fact is that we cannot from the record before us determine conclusively when Uher knew or should have known of Allstate's possible breach of fiduciary obligation in failing to settle Haugh's claim thus terminating the tolling of the statute of limitations on Uher's claim against Allstate and in particular cannot say that he knew or should have known of Allstate's rejection of Haugh's settlement offer more than two years before Haugh brought this case.7  Thus, this

---

7. In his deposition Uher testified that he was not aware of Haugh's offer at the time it was made, but that he assumed that such information

factual matter must be resolved at a trial and the district court erred in granting Allstate summary judgment. See Sadtler v. Jackson-Cross Co., 587 A.2d 727, 732 (Pa. Super. Ct. 1991).

Allstate argues that even if we apply the discovery rule in this matter "it is very clear that Mr. Uher, at the latest, was on reasonable notice of facts and circumstances upon which a possible right of recovery could be based no later than Allstate's issuance of a letter to him regarding the possibility of an excess verdict in July or August, 1994." Br. of Appellee at 15. We, however, reject a contention that this letter which did not contain any reference to the specifics of Haugh's claim and did not make reference to Haugh's offer to settle for the policy limits put Uher on notice that Allstate might have breached its duty of good faith by failing to settle the claim for the policy limits.

Finally, Allstate argues that the discovery rule is not applicable because "Haugh and his counsel 'manufactured' this bad faith claim by arbitrarily creating a narrow window of time during which they claimed they would settle for policy limits when they knew that Allstate was unwilling and/or unable to settle for policy limits during that narrow window." Br. of Appellee at 16. Allstate's argument is

without merit. First, while Allstate may have been "unwilling" to settle the claim for the modest $15,000 policy limits within the 30-day period Pribanic specified we do not know why it was "unable" to do so for any reason external to its operations. It does not, after all, point to any provision of a statute or regulation barring it from settling the claim. Moreover, we dismiss out of hand any concept that it can rely on its internal determinations and policies

_____

reached him "when [he] was given an attorney by Allstate." App. at 64. When asked whether he remembered that Allstate had hired an attorney by the name of Susan O'Connell to represent him, Uher replied that he did not recall Allstate having done so, and that"[i]f they did, I don't remember even talking to her. The first one I remember talking to is John Sieminski." Id. at 66. John Sieminski entered his appearance in the state court action on Uher's behalf on February 27, 1998. Haugh argues that this testimony indicates that Uher remained unaware of Allstate's breach of fiduciary duty until 1998. Br. of Appellant at 18.

8

in defense of a contention that it was unable to settle the claim because Haugh predicates his bad faith action on those very factors.

In any event, in 1994 Haugh had no way of knowing that four years later he would prevail in his action against Uher and that Uher thereafter would execute an assignment agreement with him so that he would be in a position, as Uher's assignee, to sue Allstate for bad faith. In addition, as Haugh correctly points out, Allstate responded to and rejected his offer to settle within the time Pribanic specified in the March 2, 1994 letter and Allstate neither asked for additional time in which to consider the offer nor attempted to accept it before Haugh formally withdrew it on May 16, 1994. Reply Br. of Appellant at 14. To the contrary, Allstate made a conscious determination to reject the offer to settle and did not make its own offer to pay the policy limits until 18 months after Haugh made his initial offer. Id. During those 18 months Haugh had to spend time and effort developing his case that would have been unnecessary if Allstate had accepted his March 1994 settlement offer. In the circumstances it is not surprising that when Allstate finally did offer to settle the claim for $15,000, Haugh rejected the offer. See Gray v. Nationwide Mut. Ins. Co., 223 A.2d 8, 10 n.5 (Pa. 1966). Overall, we are satisfied that Allstate's argument that Haugh manufactured this claim is not meritorious. Indeed, it should be evident to anyone studying this case that Allstate by its conduct precipitated the claim here.

In the circumstances, we hold that the district court erred when it granted summary judgment on a statute of limitations basis in the face of Haugh's invocation of the discovery rule as the court should not have held as a matter of law on the record here that the bad faith claim accrued at the latest when Pribanic informed Clarke on May 16, 1994, that he was withdrawing his settlement

offer. The question of when Uher knew or should have known of Allstate's breach of fiduciary obligation so that the statute of limitations would start running is a question of fact to be determined by the trier of the fact. See Sadtler v. Jackson-Cross Co., 587 A.2d at 732.

## C. STATUTE OF LIMITATIONS APPLICABLE TO SECTION 8371 ACTIONS

The next question that we must answer is what statute of limitations is applicable to this action. In an unfortunate omission which has caused considerable confusion, the legislature did not include a statute of limitations in Pennsylvania's bad faith statute, 42 Pa. Cons. Stat.S 8371. Furthermore, the Supreme Court of Pennsylvania has not determined which of several potential limitation periods applies to actions under the statute. See Lochbaum v. United States Fid. & Guar. Co., 136 F. Supp. 2d 386, 387 (W.D. Pa. 2000). The possibilities include the two-year period applicable to "action[s] upon a statute for a civil penalty" and tort actions, 42 Pa. Cons. Stat.SS 5524(5), 5524(7) (West Supp. 2001),8 the four-year period applicable to contract actions, 42 Pa. Cons. Stat. S 5525(8) (West Supp. 2001),9 and the six-year"catchall" period applicable to actions that do not fall into an enumerated category and are not excepted from the application of a limitations period, 42 Pa. Cons. Stat. S 5527 (West Supp. 2001).10 See id. at 387-88.

---

8. In pertinent part, section 5524 provides:

> The following actions and proceedings must be commenced within two years: . . . (5) An action upon a statute for a civil penalty or forfeiture . . . (7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

9. In pertinent part, section 5525 provides:

> [T]he following actions and proceedings must be commenced within four years: . . . (8) An action upon a contract, obligation or liability founded upon a writing not specified in paragraph (7), under seal or otherwise, except an action subject to another limitation specified in this subchapter.

10. Section 5527 provides:

> Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years.

In the absence of an opinion from a state's highest court on a matter of state law, a federal court determining state law must predict how that court would rule on the matter if confronted with it. See Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1046-47 (3d Cir. 1993). In making this determination, the federal court must consider "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." Id. (quoting McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 663 (3d Cir. 1980)). Of course, a court of appeals makes a de novo review of a district court's determination of state law. Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S. Ct. 1217, 1221 (1991).

The Pennsylvania state courts that have applied a statute of limitations in cases involving section 8371 claims have reached conflicting conclusions. See Susich v. Prudential Prop. & Cas. Ins. Co., 35 Pa. D. & C.4th 178, 181-82 (Ct. C.P. Beaver Co. 1998) (applying a two-year period on ground that bad faith claims fall into both the"civil penalty" and tort categories); Trujillo v. State Farm Mut. Auto. Ins. Co., 54 Pa. D.& C.4th 241 (Ct. C.P. Phil. Co. 2001) (applying a six-year period on the ground that bad faith claims sound in both tort and contract); Mantia v. Northern Ins. Co. of New York, 39 Pa. D. & C.4th 71 (Ct. C.P. Lanc. Co. 1998) (applying a six-year period on ground that bad faith claims embody elements of both tort and contract).

Likewise, the federal courts in Pennsylvania that have considered the issue have divided between the two- and six-year possibilities. See Nelson v. State Farm Mut. Auto. Ins. Co., 988 F. Supp. 527 (E.D. Pa. 1997);[11] Friel v. UNUM Life Ins. Co. of Am., No. 97-1062, 1998 U.S. Dist. LEXIS 18578 (E.D. Pa. Nov. 17, 1998); McCarthy v. Scottsdale Ins. Co., No. 99-978, 1999 U.S. Dist. LEXIS 12899 (E.D. Pa. Aug. 16, 1999); Mantakounis v. Aetna Cas. & Sur. Co. , No. 98-4392, 1999 U.S. Dist. LEXIS 12214 (E.D. Pa. Aug. 10,

---

11. In Northview Motors, 227 F.3d at 90, we cited Nelson with apparent approval.

11

1999); Liberty Mut. Fire Ins. Co. v. Corry Indus., No. 97-172E, 2000 U.S. Dist. LEXIS 11735 (W.D. Pa. Mar. 30, 2000); Lochbaum v. United States Fid. & Guar. Co., 136 F. Supp. 2d 386 (each applying a two-year period), and Woody v. State Farm Fire & Cas. Co., 965 F. Supp. 691 (E.D. Pa. 1997); Miller v. Cincinnati Ins. Co., No. 97-CV-1223, 1997 U.S. Dist. LEXIS 23725 (E.D. Pa. July 9, 1997) (each applying a six-year period).

The district court in this case relying on Lochbaum applied the two-year statute of limitations. The Lochbaum

court determined that Pennsylvania's bad faith statute sounded exclusively in tort and therefore concluded that if the Pennsylvania Supreme Court were presented with the issue, it would hold that the two-year statute of limitations applies. See Lochbaum, 136 F. Supp. 2d at 390. We affirmed the judgment in Lochbaum in a not precedential opinion and thus the issue is open in this court. Lochbaum v. United States Fid. & Guar. Co., 265 F.3d 1055 (3d Cir. 2001) (table).

Haugh argues that the district court applied the wrong statute of limitations and that Pennsylvania's six-year "catchall" statute of limitations applies to recovery of damages for bad faith under section 8371. See Br. of Appellant at 27. In support of this argument, he suggests that we should adopt the analysis of the Common Pleas Court of Philadelphia County in Trujillo, 54 Pa. D. & C.4th 241.12 While we regard certain aspects of the Trujillo court's reasoning as convincing, for example its criticism that some courts that have found that section 8371 sounds in tort have failed to highlight the similarities between bad faith claims and contract claims, more significant aspects of its reasoning are inconsistent with our precedents. For example, Haugh puts great weight on the fact that Trujillo discredits those cases that interpret section 8371"as a legislative attempt to create a 'new tort' in response to

_____

12. The Superior Court of Pennsylvania reversed Trujillo in part and held that a two-year statute of limitations applied. See No. 269 EDA 2002, 2002 PA Super. LEXIS 2599 (Sept. 3, 2002). The Superior Court, however, promptly withdrew the opinion. See No. 269 EDA 2002, 2002 PA Super. LEXIS 3705 (Sep. 4, 2002).

certain language appearing in D'Ambrosio v. Pennsylvania Nat'l Mut. Casualty Ins. Co., 431 A.2d 966 (Pa. 1981)." Br. of Appellant at 27. However, as discussed below, we have endorsed this interpretation that Trujillo discredits.

Contrary to Haugh's suggestion that "the Supreme Court recently laid this issue to rest in Birth Center ", Br. of Appellant at 28, apparently by recognizing a contractual basis for a bad faith claim, the majority opinion in Birth Center v. St. Paul Companies, Inc., 787 A.2d 376 (Pa. 2001), did not by its treatment of the bad faith claim there point to the statute of limitations applicable to section 8371 claims. See Birth Center, 787 A.2d at 389. Indeed, contrary to Haugh's position, three of the seven justices in Birth Center made clear their belief that section 8371 sounds in tort, a conclusion that suggests that a two-year statute applies. See id. at 390-91.

Justice Nigro was one of the three justices that made clear his belief that section 8371 sounds in tort. In his concurring opinion in Birth Center Justice Nigro explained that section 8371 sounds in tort because the section "appears to have been enacted in response to D'Ambrosio

and because it permits the insured to recover punitive damages, which are typically a remedy only in tort actions."13

_____

13. The following factors also support the application of a two-year statute of limitations: (1) courts historically have treated bad faith causes of action as torts, Mantakounis v. Aetna Cas. & Sur. Co., 1999 U.S. Dist. LEXIS 12214, at *13; (2) the nature of a bad faith action suggests that it is based upon a standard of conduct imposed by society and is therefore similar to a tort, id. at *13-14; (3) the "emerging jurisprudence" among the lower courts in Pennsylvania treats an action for bad faith under section 8371 as a separate and distinct cause of action from the underlying contract claim, Nelson v. State Farm Mut. Auto. Ins. Co., 988 F. Supp. at 532; (4) the vast majority of states which have recognized a cause of action for bad faith have chosen to characterize the cause of action as a tort, see id. at 533; and (5) courts have a duty to construe section 8371 so as not to produce an absurd or unreasonable result; thus, as the court stated in Nelson, "[i]t is hard to conceive that the Pennsylvania General Assembly could have intended to provide a six year limitations period for a bad faith claim under S 8371 if the cause of action sounded in areas of the law with only two and four year limitations periods. Put another way, given the options of two or four years, it does not strike us as a reasonable reading to add the two periods together." Id. at 534 n.11.

13

Id. at 391 n.3. We have supported the interpretation of section 8371 as being a direct response to D'Ambrosio. See Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 750 (3d Cir. 1994). We also have recognized that under Pennsylvania law punitive damages are typically a remedy only in tort actions. See Murray v. Commercial Union Ins. Co., 782 F.2d 432, 436 (3d Cir. 1986). After considering the germane precedents we conclude that the district court correctly predicted that the Supreme Court of Pennsylvania would hold that an action under section 8371 sounds in tort and thus is subject to a two-year statute of limitations under 42 Pa. Cons. Stat. S 5224(7).

D. COMMON LAW BREACH OF CONTRACT CLAIM

In addition to his statutory claim, Haugh asserts that he has a separate common law cause of action for breach of the duty to act in good faith in accordance with Cowden v. Aetna Casualty & Surety Co., 134 A.2d 223 (Pa. 1957), and its progeny. The district court dismissed the argument in a footnote, stating: "The Cowden decision, however, predates the promulgation of the Pennsylvania bad faith statute, and Pennsylvania no longer recognizes a common law remedy for bad faith against insurance companies." Op. at 8-9 n.6.

Clearly the district court misstated the Pennsylvania law, though in fairness it must be stated that we largely reach that conclusion on the basis of Birth Center, a decision rendered after the court ruled here. In Birth Center, the Supreme Court of Pennsylvania's most recent decision addressing bad faith failure to settle, the court explicitly rejected the interpretation of Pennsylvania law that the

district court made here. In Birth Center the insurer argued that D'Ambrosio barred the plaintiff 's claim for breach of the obligation to act in good faith. The Supreme Court stated that "where an insurer acts in bad faith, by unreasonably refusing to settle a claim, it breaches its contractual duty to act in good faith, and its fiduciary duty to its insured." Birth Center, 787 A.2d at 389. The court specifically stated that "Section 8371 . . . does not alter The Birth Center's common law contract rights . . . . The statute does not reference the common law, does not explicitly reject it, and the application of the statute is not

14

inconsistent with the common law. Consequently, the common law remedy survives." Id. at 386.

Allstate argues that Birth Center "simply broadens the scope of recoverable compensatory damages for bad faith under 42 Pa. C.S.A. S 8371 to include contractual type damages over and above the excess verdict. Birth Center does not hold that a bad faith action is in the nature of an assumpsit action." Br. of Appellee at 18. But contrary to Allstate's argument, the majority opinion and Justice Nigro's concurring opinion in Birth Center make clear that section 8371 does not supply the exclusive cause for action for suing an insurer for breach of the duty to act in good faith and make clear that an insurer's bad faith refusal to settle a claim can give rise to a contract cause of action.14

While, as we have indicated, the Supreme Court decided Birth Center after the district court released its memorandum and order on summary judgment in this case, the Supreme Court made clear that its discussion regarding the survival of the common law contract claim confirmed existing Pennsylvania law and was not a change in law.15 In addition, in Birth Center the Supreme Court affirmed the Superior Court which issued a decision that indicated, contrary to the district court's decision in this case, that it was at that time "well-settled Pennsylvania law" that insurers have a contractual duty to act in good faith when making decisions to settle. See Birth Center v.

_____

14. The majority opinion in Birth Center states that "[t]he dissent would hold that an insurer's bad faith refusal to settle a claim against its insured does not give rise to a contract cause of action. For the reasons set forth in this opinion, we respectfully disagree." Birth Center, 787 A.2d at 389. Justice Nigro wrote separately to emphasize his belief that "the law in this Commonwealth establishes that there are two separate 'bad faith' claims that an insured can bring against an insurer-- a contract claim for breach of the implied contractual duty to act in good faith, and a statutory bad faith tort claim . . . under 42 Pa. C.S. S 8371." Id. at 390.

15. In a footnote the court noted that Justice Cappy, in his concurring opinion in Johnson v. Beane, 664 A.2d 96, 101-02 (Pa. 1995), correctly examined this issue. Birth Center, 787 A.2d at 386 n.12. In Johnson Justice Cappy observed that "for almost four decades, we have recognized a common law action for bad faith sounding in contract."

Johnson v. Beane, 664 A.2d at 101.

St. Paul Cos., Ins., 727 A.2d 1144, 1159 n. 9 (Pa. Super. Ct. 1999). The Supreme Court's decision in Birth Center makes clear that even if it ultimately is held that the statute of limitations bars Haugh's section 8371 claim this bar will not impair his right as Uher's assignee to recover a deficiency judgment from Allstate under a breach of contract theory. Rather, he may have a viable contract claim as Pennsylvania's statute of limitations with respect to express contracts or contracts implied in law is four years. 42 Pa. Cons. Stat. S 5525.16

E. WHETHER ALLSTATE ACTED IN GOOD FAITH

Although the district court did not address this issue, Allstate argues that it was entitled to summary judgment for Haugh cannot show, by clear and convincing evidence, that Allstate acted in bad faith with respect to its insured, Uher. Br. of Appellee at 20. As the Superior Court explained in Birth Center, an insurer assumes a fiduciary responsibility towards its insured and therefore is obligated to act in good faith and with due care when it represents the interests of the insured when dealing with third-party claims brought against the insured. See Birth Center, 727 A.2d at 1155. Thus, "Pennsylvania law makes clear that an insurer may be liable regardless of the limits of the policy for the entire amount of the judgment entered against the insured if it unreasonably refuses an offer of settlement." Id. at 1157.

While it is true that an insurer is not under an absolute duty to settle a claim when a possible judgment against the insured may exceed the amount of coverage, LaRocca v. State Farm Mutual Automobile Insurance Co., 329 F. Supp. 163, 168 (W.D. Pa. 1971), we are satisfied that under Pennsylvania law an insurer does not comply with the good faith standard when it refuses to settle merely because it believes that its insured is not liable for the claim asserted. See Shearer v. Reed, 428 A.2d 635, 638 (Pa. Super. Ct. 1981). "An insurer does not satisfy the good faith standard

─────────────────────────────────────────────

16. It is possible, of course, that a contractual claim could be barred by the statute of limitations here as Haugh brought this action more than four years after Allstate rejected his settlement offer.

merely by showing that it acted with sincerity." Birth Center, 727 A.2d at 1156.

Allstate believes that it had "a reasonable basis for denying Mr. Haugh's claim" because it "properly and thoroughly investigated this accident." Br. of Appellee at 21. Allstate argues that it is entitled to summary judgment

because "[a]ll that is required is that the claim denial, when made, had a reasonable foundation." Id. at 22. Pennsylvania law, however, requires more. Even assuming that the quality of Allstate's investigation was reasonable, which Haugh disputes, and that Allstate had a reasonable basis for believing that Uher was not liable for the injuries attributable to the accident, there were other factors that Allstate was required to assess before refusing the offer to settle within policy limits. See Shearer, 428 A.2d at 638. Yet the record can support a conclusion that Allstate based its decision to reject Haugh's offer to settle for the policy limits on the sole factor that it did not believe Uher was liable for the accident. App. at 45.

In fact, an insurer acting in good faith must consider "all of the factors bearing upon the advisability of a settlement for the protection of the insured." Shearer , 428 A.2d at 638 (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 323 A.2d 495, 503 (N.J. 1974)). As the court stated in Shearer, "[w]hile the view of the carrier or its attorney as to liability is one important factor, a good faith evaluation requires more. It includes consideration of the anticipated range of a verdict, should it be adverse; the strengths and weaknesses of all of the evidence to be presented on either side so far as known; the history of the particular geographic area in cases of similar nature; and the relative appearance, persuasiveness, and likely appeal of the claimant, the insured, and the witnesses at trial." Id. (quoting Rova Farms, 323 A.2d at 503-04). Therefore, Haugh is correct that there is at least a question of fact on this record as to whether Allstate's refusal to accept Haugh's offer was reasonable and therefore in good faith.

Haugh argues that Allstate's failure to timely apprise Uher of Haugh's 1994 settlement offer provides a separate basis upon which a jury could conclude that Allstate did not discharge its duty of good faith. Reply Br. of Appellant

17

at 6. Because an insured contractually surrenders responsibility to its insurance company for defense of the underlying claim, the duty of good faith and fair dealing requires that the insurer reasonably inform the insured of significant developments bearing on the settlement of claims against the insured. See WALL, LITIGATION AND PREVENTION OF INSURER BAD FAITH S 3.03 (2d ed. 1994).17

Indeed, a failure to notify the insured of significant settlement negotiations is a contravention of Allstate's own policy manual18 and Joseph Toth, the Allstate adjuster who handled Haugh's claim against Uher in litigation, testified that Allstate's failure to notify Uher of the settlement offer did not comport with his understanding of Allstate's good faith obligations. App. at 57-58. As Haugh points out, Allstate's failure to notify takes on additional significance given that it occurred before Allstate apprised Uher that he could retain private counsel to oversee his interests. Reply

Br. of Appellant at 6. Haugh is correct that Allstate's failure to inform Uher of Haugh's settlement offer could constitute evidence of bad faith. See Smith v. General Accident Ins. Co., 697 N.E.2d 168, 171 (N.Y. 1998); Annot., 40 ALR 2d 168, S 17; WALL, LITIGATION AND PREVENTION OF INSURER BAD FAITH S 3.07 (2d ed. 1994).

Finally, there is no merit to Allstate's suggestion that it might have been acting in bad faith if it had accepted Haugh's offer to settle for the policy limits. See Br. of Appellee at 22. As Haugh points out, the cases that Allstate cites in support of this argument are inapposite as the insureds' interests involved in those cases, Bleday v. OUM Group, 645 A.2d 1358 (Pa. Super. Ct. 1994), and Maguire v.

---

17. Wall defines the insurer's duty more expansively to require it "continually" to inform the insured of "all" developments but we doubt that the Supreme Court of Pennsylvania would go that far.

18. Allstate's policy manual provides in relevant part that "in any suit in which it appears probable that an amount in excess of the limit of the policy is involved, the company or its attorney should inform the insured or any additional attorney retained by the insured at his own expense of significant settlement negotiations, whether within or beyond the limits of the policy." App. at 80.

18

Ohio Casualty Insurance Co., 602 A.2d 893 (Pa. Super. Ct. 1992), are completely dissimilar to Uher's in this case. Reply Br. of Appellant at 9. Indeed, we hardly can conceive that if Allstate had sought Uher's views on whether it should settle for $15,000 when Haugh offered that settlement, that Uher would not have urged it to do so.19

We are satisfied that there is sufficient evidence to create a genuine issue of material fact as to whether or not Allstate acted in good faith. This evidence includes: (1) proof that Allstate did not consider factors other than liability, including the impact that the failure to settle would have on Uher given the serious personal injuries suffered by Haugh and the minimal policy limits; (2) Allstate's failure to timely notify Uher regarding Haugh's settlement offer; and (3) evidence that Allstate may have done a less than satisfactory investigation as to liability.20

F. THE ASSIGNMENT

Allstate also argues that it is entitled to summary judgment on the theory that the agreement by which Uher assigned his rights against Allstate to Haugh is invalid. Under Pennsylvania law an insured's claims against his insurer for breach of contract and breach of fiduciary duty, and his claims under section 8371 for punitive damages, counsel fees and interest are assignable. Brown v. Candelora, 708 A.2d 104, 112 (Pa. Super. Ct. 1998). While the Supreme Court of Pennsylvania has not decided the issue, the Pennsylvania Superior Court has held that an

injured third-party claimant is prohibited from asserting a bad faith action against the tortfeasor's insurance company unless these rights have been expressly assigned by the policyholder. See id. at 111-12. Thus, if we held that the assignment was invalid Allstate would be entitled to summary judgment.

_____

19. Of course, Allstate does not suggest that it needed Uher's permission to settle Haugh's claim for $15,000 in 1994 or later when it attempted to do so.

20. Haugh argues that "Ms. Clarke's investigation was tantamount to no investigation at all." Reply Br. of Appellant at 7. The evidence in the record is not sufficient for us to determine whether or not Allstate adequately investigated Haugh's claim.

19

Allstate predicates its argument that the assignment agreement between Uher and Haugh is invalid and unenforceable on the theory that Haugh, instead of signing the agreement himself, authorized his sister to sign his name to the agreement. As Haugh points out, Allstate's argument is based on an assumption that Uher would not have executed the assignment had he known that Haugh had not in fact signed the agreement himself[21] and this contention raises a question of fact that cannot be resolved on a motion for summary judgment. See Reply Br. of Appellant at 15.

III. CONCLUSION

For the foregoing reasons, we will reverse the order of October 22, 2001, and remand the matter to the district court for further proceedings.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

21. It seems highly unlikely that Uher would prefer, as Allstate's argument suggests, not to be bound by the assignment agreement and instead to be subject to a massive deficiency judgment.

20