

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-16-2003

# Carney v. Local 98 Pension

Precedential or Non-Precedential: Non-Precedential

Docket 02-2679

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Carney v. Local 98 Pension" (2003). *2003 Decisions.* Paper 553.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/553

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 02-2679 and 02-3488

ANDREW CARNEY

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL
UNION 98 PENSION FUND; SCOTT ERNSBERGER, ADMINISTRATOR;
JOHN J. DOUGHERTY, TRUSTEE; EDWARD NEILSON, TRUSTEE;
JOSEPH AGRESTI, TRUSTEE; THOMAS J. REILLY, JR.,TRUSTEE;
DENNIS LINK, TRUSTEE; WILLIAM C. RHODES, TRUSTEE

International Brotherhood of Electrical Workers
Local Union 98 Pension Fund,
Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Civil No. 00-cv-06270
District Judge:  The Honorable James McGirr Kelly

Argued April 8, 2003

Before: BECKER,[*] BARRY and BRIGHT,[**] Circuit Judges

---

[*]Judge Becker completed his term as Chief Judge on May 4, 2003.

[**] The Honorable Myron H. Bright, Senior Circuit Judge, United States Court of
Appeals for the Eighth Circuit, sitting by designation.

—————

Laurance E. Baccini, Esq.
Julie L. Fuchs, Esq.
Klehr, Harrison, Harvey,
Branzburg & Ellers
260 South Broad Street, Suite 400
Philadelphia, PA 19102

Attorneys for Appellant

Edward J. Foley, Jr., Esq.
923 Fayette Street
Conshohoken, PA 19428

Attorney for Appellee

—————

OPINION
—————

BARRY, Circuit Judge

This appeal arises out of a lawsuit brought by appellee Andrew Carney against the

International Brotherhood of Electrical Workers Local 98 Pension Fund ("the Fund") and

its Trustees ("the Trustees") to recover unpaid employment benefits pursuant to section

502(a)(1) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §

1132(a)(1). In his complaint, Carney alleged that the Trustees arbitrarily and capriciously

denied his June 18, 1996 application for disability pension benefits, benefits to which he

was entitled under the Fund's pension plan ("the Plan").  The Fund appeals the District Court's memorandum and order, filed May 24, 2002, in which the Court determined that the Trustees' denial of Carney's application was arbitrary and capricious, and granted Carney's motion for summary judgment, awarding him the unpaid disability benefits.  An appeal is also taken from the District Court's subsequent memorandum and order, filed August 14, 2002, granting Carney's motion for attorneys' fees and costs pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1), and awarding attorney's fees in the aggregate amount of $104,062.50 plus costs.[1]

We have jurisdiction over these consolidated appeals pursuant to 28 U.S.C. § 1291.  Because we agree, after a thorough review of the record, that the Trustees' denial of Carney's disability pension application was arbitrary and capricious, we will affirm the District Court's May 24, 2002 order.  As to the award of attorneys' fees, however, we find that the amount of fees allowed by the District Court was, as to certain items, excessive.  We will, therefore, vacate the August 14, 2002 order and remand for entry of a judgment awarding fees in accordance with this opinion.

I.

Because we write primarily for the parties, we recount only those facts essential to

---

[1] The actual amount of fees awarded in the August 14, 2002 order was $95,940 to reflect $8,122.50 already awarded in conjunction with an earlier motion for fees.

our decision. Carney joined the International Brotherhood of Electrical Workers Local Union 98 ("Local 98") in 1962. Local 98 maintained the Plan, which provided retirement and disability pension benefits to its members. On July 31, 1991, while working as an electrician, Carney suffered a serious laceration to his right hand, severing an artery and causing nerve damage. He has not worked as an electrician since the July 1991 accident.

On June 21, 1996, Carney submitted an application for disability pension benefits under the Plan. At the time of his application, the Plan provided that a member was eligible for disability benefits if the member: (1) was determined by the Plan physician to be "totally and permanently disabled" or qualified for federal social security long-term disability benefits; (2) was not engaged in regular employment as an electrician; (3) was at least thirty years old; and (4) met certain vesting requirements. The Plan also imposed obligations on the Trustees concerning the consideration and resolution of benefits claims, requiring them to either decide claims within 90 days of their submission, or, if additional time was required, to notify the applicant of the reason for the delay and decide the claim within 180 days of its submission.

At the time of his application, Carney met the second, third and fourth eligibility requirements for disability benefits – that is, he was over 30 years old, had more than five years of credited work history, and had not worked as an electrician since 1991. In order to finalize his application, the Plan Administrator notified Carney that he needed to be examined by the physician designated by the Plan to make disability determinations, Dr.

4

Michael LeWitt, and instructed Carney to forward relevant medical records to Dr. LeWitt. Carney subsequently attempted to contact the Plan Administrator to notify him that he might have difficulty obtaining his voluminous medical records before his examination and to request assistance in obtaining the records. After the Plan Administrator failed to respond to Carney's request for assistance, however, Carney went ahead with the examination by Dr. LeWitt without the benefit of the medical records concerning his injury. The same day he examined Carney, August 30, 1996, Dr. LeWitt notified the Trustees that, in his opinion, Carney was "totally and permanently disabled" under the Plan definition as a result of the injury to his right hand. Dr. LeWitt's disability determination satisfied the only remaining requirement for disability benefits detailed by the Plan. Thus, as of July 31, 1991, only final approval by the Trustees stood between Carney and his disability pension benefits.

The Trustees, however, deferred a decision on Carney's completed application for nearly a year, before ultimately denying it on July 3, 1997. Carney did not receive notice that his application had been deferred until December 20, 1996, when the Plan Administrator sent him a three-sentence letter which simply notified him, without any explanation, that his application had been deferred. The Trustees' depositions, however, indicate that the Trustees harbored suspicions as to whether Carney was indeed disabled, despite Dr. LeWitt's finding of total and permanent disability. Despite their suspicions, the Trustees never requested that Carney provide any additional information or undergo a

5

further physical examination.

Instead, the Trustees decided to amend the Plan to modify the eligibility requirements for disability benefits. Carney received another letter from the Plan Administrator on May 7, 1997 advising him that the Trustees would not reach a decision on his application until a "review of Plan procedures regarding disability pension applications has been finalized." Two weeks later, at a meeting on May 22, 1997, the Trustees voted to amend the Plan to require that applicants qualify for federal social security long-term disability benefits in order to be eligible for disability pension benefits. At the same meeting, the Trustees voted to deny Carney's application because it did not satisfy the new disability eligibility requirement. On July 3, 1997, nearly 13 months after the date of Carney's original application, the Plan Administrator notified him that his application had been denied, and had been denied solely because he had not met the amended eligibility requirement.

Carney, pro se, filed a timely administrative appeal with the Trustees, dated September 2, 1997, inquiring why his application had been deferred for such a long time, and why the amended eligibility requirement was relevant to his application filed nearly a year earlier. In a letter dated December 12, 1997, the Trustees denied Carney's appeal, simply reiterating his failure to meet the amended eligibility requirement. After unsuccessfully applying for social security disability benefits in an attempt to comply with the new requirement, Carney, now with the assistance of counsel, filed a supplemental

6

appeal with the Trustees on November 15, 1999. On June 19, 2000, the Trustees summarily denied the supplemental appeal due to Carney's failure to satisfy the amended eligibility requirement. Again, the Trustees had not attempted to obtain any additional information about Carney's medical condition, despite his delivery of the signed release to obtain his medical records requested by Fund counsel in conjunction with Carney's supplemental appeal.

Carney filed suit against the Plan, the individual Trustees, and the Plan Administrator on December 11, 2000. His complaint asserted three causes of action: (1) an ERISA claim that the Trustees breached their fiduciary duty under 29 U.S.C. § 1104(a)(1)(A) in delaying and denying his application; (2) a claim that the Trustees failed to provide requested Plan documents as required by ERISA in 29 U.S.C. § 1024(b); and (3) a claim under 29 U.S.C. § 1132(a)(1)(B) for the disability benefits wrongfully denied. The Complaint sought an injunction requiring the Trustees to grant Carney's application, compensatory damages, and reasonable attorneys' fees under 29 U.S.C. § 1132(g)(1).

The parties subsequently filed cross-motions for summary judgment. On May 23, 2002, the District Court granted the Trustees' motion for summary judgment as to the first and second counts of the complaint – the claims for breach of fiduciary duty and failure to produce Plan documents – but granted Carney's motion for summary judgment as to the third count, holding that the undisputed facts showed that the Trustees had arbitrarily and capriciously denied Carney's application for disability benefits under the Plan. The Court

7

ordered the Fund to pay the requested benefits.

Carney thereafter filed a motion for an award of attorneys' fees and costs pursuant to 42 U.S.C. § 502(g)(1), which, as noted above, was granted by the District Court in an order filed August 14, 2002. In support of the motion, counsel's time records indicated that he had spent a total of 512.8 hours on the case, including 174.7 hours preparing for, taking, and reviewing the depositions of six Trustees and the Plan Administrator, and 44.6 hours preparing Carney's summary judgment motion. After reviewing the records, the District Court found that the number of hours claimed by counsel was excessive. The Court deducted 10 hours from the 44.6 billed for the preparation of the summary judgment motion, 29.9 hours from the time billed for depositions, and an additional 10.3 hours because some time records lacked specificity, for an overall deduction of 50.2 hours. The Court then multiplied the remaining hours by an hourly rate of $225, resulting in a fee award of $104,062.50 plus costs, minus $8,122.50 that had been awarded previously.

II.

Our review of the District Court's grant or denial of a motion for summary judgment is plenary, and we thus apply the same standard as the District Court. Haugh v. Allstate Ins. Co., 322 F.3d 227, 230 (3d Cir. 2003) . That is, summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In the ERISA context, where an employee benefit plan expressly gives the plan administrator discretion over the interpretation and application of plan provisions, a district court reviews the administrator's or fiduciary's determinations under an arbitrary and capricious standard. Mitchell v. Eastman Kodak Co., 113 F.3d 433, 438-39 (3d Cir. 1997). The parties do not dispute that the Plan here authorized such discretion, and the District Court was thus clearly correct to apply the arbitrary and capricious standard of review to Carney's claim for benefits. "Under the arbitrary and capricious standard, the court must defer to the administrator of an employee benefit plan unless the administrator's decision is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan." Abnathya v. Hoffman-LaRoche, Inc., 2 F.3d 40, 41 (3d Cir. 1993). This articulation of the standard comports with ERISA's express statutory charge that a plan administrator or other fiduciary "discharge his duties with respect to a plan . . . in accordance with the documents and instruments governing the plan . . . ." 29 U.S.C. § 1104(a)(1)(D).

On appeal, the Fund advances three arguments as to why the District Court erred when it granted Carney's motion for summary judgment. First, it argues that in reviewing under the arbitrary and capricious standard, the District Court improperly limited the record to that evidence that was before the Trustees at the time they denied Carney's benefits application and subsequent administrative appeals. Second, it argues that the

9

record evidence does not establish that the Trustees' handling of Carney's application was arbitrary and capricious. And third, it argues that even if the Trustees' actions were arbitrary and capricious, the District Court should have remanded the case to the Trustees for further consideration rather than awarding Carney the requested benefits outright. Each of these arguments is without merit.

As an initial matter, the District Court properly limited the record on summary judgment to the administrative record that was before the Trustees at the time of their decision. Because the purpose of arbitrary and capricious review is to determine the reasonableness of the determination at the time it was made, the reviewing court may only consider evidence that was contained in the record at that time. Mitchell, 113 F.3d at 440; Abnathya, 2 F.3d at 48 n.8. The purpose of so limiting the record is to encourage communication between plan administrators or fiduciaries and beneficiaries in order that conflicts can be resolved without resort to litigation. See Vega v. National Life Ins. Servs., Inc., 188 F.3d 287, 300 (5th Cir. 1999). To allow the introduction of evidence as to what occurred after the administrative process had been completed would effectively remove any incentive to conduct an adequate investigation of claims to resolve disputes at the administrative level – precisely what the Trustees failed to do here.

Properly limiting the scope of review to the administrative record, the undisputed evidence demonstrates that the Trustees' denial of Carney's application was, indeed, arbitrary and capricious. The Trustees breached express Plan provisions, as well as the

10

ERISA regulations mandating those provisions, in their handling and ultimate denial of Carney's disability benefits application. For starters, the record contains no evidence that the Trustees attempted to comply with the Plan provisions requiring that an application for benefits be decided within 90 days of the receipt of the application, or, if additional time is needed, within a maximum of 180 days if notice is given to the applicant within 90 days explaining the reason for the delay. These time constraints upon benefits determinations by plan administrators and fiduciaries are expressly mandated by ERISA's implementing regulations in 29 C.F.R. § 2560.503-1(f)(1). Here, the Trustees did not even consider Carney's application until more than 120 days after Carney submitted his application and then they failed to provide him with a timely explanation for the delay of a decision on his application. By the time the Trustees finally denied the application on July 3, 1997 based on the amended Plan eligibility provision, Carney's application had been pending for over a full year – more than twice as long as the maximum time that the both the Plan and the regulations allow.

The Trustees not only entirely ignored these procedural requirements imposed by the Plan itself and by ERISA regulations, they also disregarded the fact that Carney had satisfied all of the Plan's requirements for benefits at the time Dr. LeWitt sent his disability determination to them. Although the Trustees repeatedly contend that Carney failed to adequately apprise them of his medical condition, they never asked that Carney be examined by another physician or requested that he submit any medical records. The

11

Trustees' speculative opinions and suspicions concerning the genuineness of Carney's disability were entirely unsupported by any medical evidence in the administrative record. In sum, the undisputed evidence indicates that the Trustees' decision to defer and then to deny Carney's application was arbitrary and capricious: it violated Plan provisions, was inconsistent with express ERISA requirements, and was entirely unsupported by record evidence. See Skretvedt v. E.I. DuPont de Nemours & Co., 268 F.3d 167, 184 (3d Cir. 2001); Mitchell, 113 F.3d 433, 442-43 (3d Cir. 1997).

Finally, the District Court's decision to directly award Carney his benefits, rather than remand the case to the Trustees, was not an abuse of discretion.[2] To allow the Trustees yet another opportunity to substantiate their suspicions after they already had nearly four years of administrative proceedings, including two administrative appeals, within which to conduct a further investigation into Carney's medical condition would contravene the underlying policies of ERISA and invite similar dilatory behavior by ERISA fiduciaries. See Zervos v. Verizon New York, Inc., 277 F.3d 635, 648 (2d Cir. 2002); Caldwell v. Life Ins. Co. of North America, 287 F.3d 1276, 1288-89 (10th Cir. 2002). Accordingly, we will affirm the grant of summary judgment to Carney and the

---

[2] Although we have not explicitly addressed the appropriate standard of review, several other courts of appeals have held that a District Court's choice of remedy in ERISA benefits denial cases is reviewed for abuse of discretion. See, Cook v. Liberty Life Assurance Co. of Boston, 320 F.3d , 24 (1st Cir. 2003); Zervos v. Verizon New York, Inc., 277 F.3d 635, 648 (2d Cir. 2002); Grosz-Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1163 (9th Cir. 2001); Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 697 (7th Cir. 1992).

award of benefits, the remedy the District Court believed to be appropriate.

## III.

While we will affirm the District Court's May 23, 2002 order, we will vacate its August 14, 2002 order awarding Carney attorneys' fees in the amount of $104,062.50 and remand for the entry of a judgment awarding fees in accordance with this opinion. We review the District Court's decision to award fees, and the reasonableness of the fees awarded, for abuse of discretion. See 29 U.S.C. § 1132(g)(1) ("In any action brought under this subchapter . . ., the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.").

The only error we see in the fee award concerns the District Court's determination of the number of hours that Carney's counsel reasonably expended on the depositions in this case. The Court's decision to award fees in the first instance, after carefully considering the required factors, was clearly not an abuse of discretion. See Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983). Moreover, the Court considered all of the time records submitted by Carney's counsel. And finally, the Court's determination that an hourly billable rate of $225 per hour was a reasonable rate for calculating the lodestar amount was likewise not an abuse of discretion. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

But "[h]ours are not 'reasonably expended'" if they are "excessive, redundant, or

13

otherwise unnecessary." Id. Here, the time spent by Carney's counsel preparing for depositions and reviewing deposition transcripts is clearly excessive. Counsel claimed reimbursement for a total of 174.7 hours for preparing for, taking, and reviewing the depositions of six Trustees and the Plan Administrator, despite the fact that these depositions concerned identical subject matter, all occurred within a six-week period, and each only lasted between five and seven hours. On average, this translates into approximately 25 hours claimed per deposition, even though all involved largely the same documents, questions and events.

While the District Court correctly recognized that the hours claimed in connection with these depositions were excessive, its deduction of only 39.9 hours from the total request of 174.7 hours was, as we see it, an insufficient adjustment to compensate for the redundancy of deposition preparation and review. See Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). Especially where the lodestar amount is calculated using a billing rate of $225 per hour to reflect counsel's status as an ERISA expert, the time preparing to address the same issues and reviewing similar testimony is, in our view, unreasonable.

The District Court has already carefully considered the fee issue, and appropriately considered it in light of the relevant factors as, of course, have we. We have determined that it would make little sense to require the District Court to further consider that issue in light of the fact, and fact in our view it be, that a 25% reduction for the remaining hours

14

claimed in connection with the preparation for and review of the depositions in this case would give Carney the maximum amount of attorneys' fees to which we find he could reasonably be entitled. Accordingly, we will remand so that the District Court can reduce the 134.8 remaining hours claimed in connection with the depositions by 25% and otherwise reenter its order of August 14, 2002.

IV.

For the foregoing reasons, we will affirm the District Court's May 23, 2002 order granting Carney's motion for summary judgment and awarding the requested benefits, but will vacate the August 14, 2002 order awarding attorneys' fees and remand for entry of a judgment consistent with this opinion.

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

/s/ Maryanne Trump Barry
Circuit Judge